The next case is Thaddaeus Myrick v. City of Hoover, Alabama. Michael Jackson is here for the appellate for City of Hoover. And J. Flynn Mozingo is here for the appellees. And Mr. Jackson, you may begin when you're ready. Good morning, I'm Michael Jackson. I'm here on behalf of the City of Hoover. In this case, the court must decide if the plaintiff's long-term unpaid military leave is comparable to the paid administrative leave that Hoover provides for a number of different circumstances, almost all of which are short-term. There are two paths in construing the USERRA statute. One is construing the USERRA statute. And if that statute resolves the case, then the court need not look any further. The other path is to apply the Department of Labor's regulations. But we contend that either path the court goes down, the result will be the conclusion that these types of leave are not comparable and that the plaintiffs are not entitled to the relief that they seek. So the place to start when a statute is an issue is with the text or language of the statute. And unless that's the beginning and the end, unless the statute is employees who were on paid leave to get, accrue paid time off and holiday pay. But to not, when employees were on unpaid leave, they did not accrue paid leave, paid time off and holiday pay. And the plaintiffs contend that paid status and unpaid status can't be considered. But the statutory text here in 38... But it doesn't say the same pay status. It says similar seniority status and pay who are on furlough or leave of absence. Yes, Your Honor. I mean, we start with the text, but the text isn't the only thing we take a look at if we're unsure about the text. If you're unsure, but what does pay mean if pay can't be considered? I mean, pay is right there in the statute. Your position is that pay cannot be considered whether you're on unpaid or paid status. And pay is right there in the statute. So we contend that that is because the distinction that the city made is based on the pay of the who are on furlough or leave of absence. You don't interpret this statute as the fact that similar pay can be considered along with status, other status? Well, the... I guess what I'm suggesting is it's not crystal clear that it's got to have the same pay status. It's not crystal clear from the statute, is it? Okay. But I guess our point is that they're saying that pay can't be considered at all. And... Well, I don't think that's what they're saying. I mean, from my perspective, what's ambiguous is what is pay referred to? Does it refer to your regular salary or does it refer, as you argue, to whether the leave is paid or unpaid? And I'm concerned that if the employer has the ability to designate military leave as unpaid and then that makes it not subject to you, Sarah, then where is the relief that Congress intended for military? They would be entitled to then the same relief that anybody on any other type of unpaid leave would be entitled to. For example, someone on FMLA leave is entitled to, if it's a comparable leave. So if FMLA is comparable to unpaid long-term military leave and both unpaid and someone under the FMLA is allowed to keep their health insurance, for example, then someone on military leave would be allowed to keep their health insurance under the same terms. Okay. Well, that's an argument for why your rating might be correct, but I don't see how that resolves the ambiguity in the statute that I pointed out. What does pay refer to? Well, if the court believes that the statute is ambiguous, then the next step is to go to the regulations and see what the Department of Labor says. But before I go there, I do want to say that I do think that if you, as the statute says, entitled to such other rights and benefits as are generally provided by the employer to employees having similar seniority status and pay who are on furlough or leave of absence. So that who are on furlough modifies the employees. So the employees who are on furlough or leave of absence having similar status of pay. They've sort of made an argument that we're flipping those two clauses, but I don't think it makes a difference whether you flip the clauses or not because who are on pay or who are on furlough or leave of absence is going to modify employees whether you flip those two clauses or not. So that's the only point I will make before I move on to the Department of Labor regulations. So the Department of Regulations say that you should look at different factors and says that the first factor and what may be the most important factor is the duration of the leaves. And the district court in conducting this comparability analysis said that this factor favors the city. And I'm trying to figure out how it reached that conclusion. Isn't military service usually longer than paid administrative leave? Actually, what the district court said was that, found that military leaves were about three times longer than paid administrative leaves. And the district court said this three to one ratio was significant and that the duration factor favored Hoover in the USARA comparable leave analysis, but the court still ruled against Hoover. Even though this factor weighed in favor of Hoover because there was a lot of speculation in the district court's opinion about, well, there could be longer and it could go that long and there could be a lot more. But that was a lot of speculation. It wasn't based on the evidence before the court. Well, the leaves that were based on internal investigations, the longer leaves were comparable to the military leave, weren't they? You know, like an average of 16 months. There have been three in the last 25 years and only one in the last 20 years that were, you know, exceeded 120 days. And those were in the three 400 day range, which some of the military leaves were. But all of the plaintiffs, I think, had longer military leaves than those three employees. There was one that was substantially longer, something like 58 months. Yeah, two and a half times longer. But the others were very comparable to the amount of leave that was given for internal investigations, weren't they? There were, roughly, there were some that were a year or a little over a year and that would be comparable. But generally, they're not. And take the outliers of the duration and then compare them to what is fairly common. It's just not a fair comparison just because there were three, you know, two of those were in 1997 and 98 and then since, or one since. But there's nothing that says we have to average or we have to look at what's most common. I mean, it seems to me that you could compare the longest military leaves to the longest unpaid leave, couldn't you? Administrative leave is what I'm talking about. I wasn't very clear there. Yeah. The paid administrative leaves, though, are generally for short term things and generally the investigation leave is short. But you know, the Department of Labor regulation doesn't really give much guidance on that. And it allows for other factors to be considered. And that's why we think that the frequency is something that also can be considered. Well, it affords the district courts some discretion into taking into consideration various factors like purpose and choice and duration. It's not, I mean, and I guess what the district court did was it looked at factors that other courts have considered in conducting a comparability analysis. But the only factor, I guess, that the court here relied upon to conclude, and I don't even know how it reached this factor, to support the city was duration. None of the other factors support the city, do they? No, I don't think that's correct. I think purpose absolutely supports the city. Well, duration I think supports the city. I think purpose supports the city because the reasoning behind paid administrative leave for an investigative review is to get the employee out of the workplace to conduct the investigation. That's for the benefit of the employer. Now, there's been some suggestion that... Of course, the district court said this supports the officers, right? The district court said that, but the reason, that's the reason that they're paid is to benefit the employee. But the reason for the leave, and that's what we're looking at. What is the reason for the leave? Not the reason why they're paid. The reason that they're paid is so that they, it's kind of innocent until proven guilty. We don't want to punish them while we're investigating them. But the reason for the leave is to remove them from the workplace so an investigation can take place without them in the workplace. And that's not... But there's also paid administrative leaves for things like jury duty, which is for the benefit of the employee that they get paid while they're, while they have to be out for a legal requirement, right? That is a legal requirement in Alabama. Right, and those folks, just like military personnel, couldn't be called back into work by the employer while they're on jury duty, could they? Which goes to the control factor. Only for jury duty. All the other reasons for paid administrative leave, they can be called back into, and really the city, I mean they could have, I don't know why they did this, but they put jury duty under paid administrative leave because they could have a separate jury duty leave, but for some reason they did that. But all the other reasons, they can be called into work. And really if they're excused from the jury service, they have to come back into work. One of the strongest arguments that the officers make in their brief is that this is a remedial statute that should be construed liberally to protect veterans' rights. And the courts have said those sorts of statutes should be construed liberally in favor of members of the military. So how do you get, I mean, how are you going to get around that purpose? Well, my time's expired. Can I go ahead? Go ahead. Okay. I get by that because when, it's not a, the plaintiffs always win. You know, it's the, I've quoted some things in my reply brief from, you know, Brian Garner and Justice Scalia's book on interpreting statutes that say really when you say liberally that the statutes really have to just be read fairly. What does the plain, ordinary meaning of the statute? And that's what the courts tasked to do. To put the thumb on the weight of in favor of one party or another is not the way the law works. The law is you should read the statute fairly according to the plain meaning of the statute and as well as the regulations. All right. We have your argument. Thank you, Mr. Jackson. We'll hear from Mr. Mozingo. May it please the court. Good morning, your honors. The issue today is whether officers Myrick, Braden, Popey, and Fountain's employment rights protected by USERRA were violated by the city of Hoover as a matter of law. Now, the district court correctly found that they were and we ask your honors using the de novo standard of review to affirm the summary judgment entered by the district court. And I would like, before I proceed further, I'd like to point out I do have Fountain and Popey here with us today. We begin with the intent of USERRA, which specifically says it exists to encourage non-military careers. Then we have a guide to apply USERRA and that is legislation granting protections and benefits to members of our armed forces is to be liberally construed in their favor. I submit to you that is more than a guide. That is the law. Why? I counted at least three Supreme Court opinions making that same statement. Going all the way back to Fishgold v. Sullivan in 1946, Alabama Power v. Davis in 1977, and King v. St. Vincent's Hospital in 1991, and the latter two arising directly from the state of Alabama as this case does. In fact, I counted no less than 23 different justices who supported that statement in a 45-year period in three separate decades. So I submit to you that is more than just a guide. That is the law for applying USERRA. Plus, that same guide or law was adopted by the House Committee on Veteran Affairs in its report to Congress on USERRA. And it's also been adopted by the Secretary of Labor who under USERRA is charged with promulgating rules and regulations for its enforcement. Now let's look at the big picture of USERRA itself. It is to place the veteran in the position he would have occupied had he remained continuously employed instead of answering the nation's call to service. How does it do it? In a very, very comprehensive way. The veteran is our first predecessor USERRA legislation was enacted. But it also does this. It guarantees the veteran the right to continue his health benefits with his employer while he is on active duty. So that distinguishes it right away from the Family Medical Leave Act. It is separately that he is on active duty and it requires the employer to make any contributions it would be obligated to make for that period the service member is on active duty. And then it addresses non-seniority benefits, which we are here on today. And for non-seniority leave benefits, which our four officers have sued for, it says that it judges the standard by employees having similar seniority status in pay who are on furlough or leave of absence. But he says it's clear that the pay status is not comparable, right? Because employees out on administrative leave are paid, out on military leave are not paid. And so what do we do with that word in USERRA? The pay has to be similar. Your Honor, well, as far as what I understand the city's argument to be, they're making the distinction between paid leave and unpaid leave. And they're saying that we were on unpaid leave. And therefore, and I've read their brief several times, they make that same argument. Well, the plaintiffs are on unpaid leave, right? The plaintiffs were on unpaid leave for a portion of their military service. And the way that works is when you go on leave, and USERRA also covers this as well. When you go on leave, you're allowed to use, whether you have vacation time, things of that nature. USERRA specifically provides the service member can use that on active duty. But you get paid for 165 days and then you don't get paid, right? Well, as long as you have any credible service remaining, you can use it all, however long that may be. And our officers did, by the way. They used up time that they had banked while they were on active service. We're only, this lawsuit only concerns the time in which they were on active service and they weren't accruing any benefits. And the reason they weren't accruing benefits, because the city changed their status. As long as they were using their bank time, they remained active payroll status. When they quit using their bank time, they went into an inactive payroll status. And at that point, the city denied them the right to accrue the benefits they seek here. Because when they went on that status, then they're no longer comparable to those who are on paid administrative leave, right? Well, they are in a different status as far as what the employee characterizes it. And Judge Wilson, let me, I think this language is helpful. This is from Tully versus Department of Justice back in 2007. Payment of an employee's salary while the employee is absent from work is a benefit provided during the absence, not a characteristic of the absence. So that was just a benefit. We could have sued for the payment. We did not. We sued for the accrued benefits. Now, there have been several decisions that have been released that recognize, and though they concern short-term military leave, our officers roam prolonged duty. But they have recognized that you can, a service member can sue for pay he was denied while on short-term military duty. And specifically, that is Traverse v. Federal Express from the Third Circuit that was released in 2021, and White v. United Airlines from the Seventh Circuit in 2021. And we have another circuit that just joined that group, and that is the Ninth Circuit. And they recently released an opinion, and I have copies that I brought your honors here. They recently released an opinion in Clarkson that said an officer could sue for pay he was denied while on short-term military leave. And by the way, Clarkson is one of the cases, the district court opinion in Clarkson is one of the cases they relied upon in their brief, but the Ninth Circuit has reversed it. Okay. Didn't the Ninth Circuit reject the argument that the city is making with regard to that paid or unpaid would refer to the word, quote, pay in the statute? Correct. Correct. All of those, the way I read the Traverse opinion and the other opinions, you can't focus on whether it's paid or unpaid leave, because if you did, then those officers could never sue for the pay that the circuits have recognized they can bring a suit for. But that's more of a policy argument than a textual argument, isn't it? Well, I believe you'd have to rewrite the statute to correspond with what I understand the city is saying, your honor, as far as the statute is written. Again, it's, and I want to be sure I'm addressing your question. Can you repeat it? Yeah. Well, it wasn't a very good question, apparently. I thought that the argument you were making is that if we were to read the statute this way, then it wouldn't have the intended effect for the military members. Was that your argument? Because I don't see anything in the statute that tells us whether pay refers to things like salary or whether it refers to whether the person's on furlough for paid or unpaid leave. Well, I think comparison, if you had, for example, hourly or salary, those possibly would be comparisons if that was the distinction. But the city of Hoover's administrative leave policy doesn't make any distinction. It's applicable to all employees, regardless of how they're paid, okay, whether it's salary or hourly. It's applicable to all employees. They're all treated exactly the same. And it's a big basket of leave, as we have pointed out. It covers not only short-term, but long-term, prolonged periods, like our officers experience. If we, let's talk about duration for a minute. It sounded like you were kind of transitioning into that. If we don't include the paid administrative leave for internal investigations, isn't the leave otherwise for short-term absences? Well, that is one of the distinctions that the 11th Circuit, excuse me, the 9th Circuit rejected, Your Honor. And I agree wholeheartedly with that opinion, where they say, in that case, the district court wrongfully grouped all leaves together. It grouped all non-military leaves and grouped all military leaves when comparing duration. As the 9th Circuit stated, under such a categorical approach, no other type of leave would look similar. And it is our position, if you take the entire structure of Yesera, how it's built, the non-seniority benefits, the health benefits, the pension rights, and the seniority benefits, you take that and you look at the Supreme Court's repeated statement, it must be construed broadly. Then, what we have to identify as the plaintiffs, simply as leaves that are of similar duration to what our officers experienced. And we did that, and it was undisputed. Now, the court, district court below, referred to them as outliers, but it also said, yes, these leaves are comparable. Well, those leaves were the focus of our lawsuit, and that was the duration factor that we said was established, and the district court ultimately agreed. Although the district court did group some, I would take not equivalent. But if you're going to give Yesera a broad statute, all the service member should be required to do is identify that the employer granted similar leaves. When you start grouping leaves, you start averaging them out, you have highs and lows, and you have frequency. Again, City of Hoover mentioned frequency, and Clark's and the 9th Circuit said frequency is not a and it only defeats the application of Yesera. So when you start taking in all these different variables in determining grouping, what you get is a hyper-technical application of the statute. Because number one, if you look at Clarkson, that was a battle of experts, and they had averaged the leaves. Yesera shouldn't come down to a battle of experts. It's to be applied for the benefit of the service member. It's to be applied liberally. There should be no room for a battle of experts. It has no place. All the officers have to do is show my employer grants comparable leaves to the military leave that I've experienced, and they provide benefits that I would have earned if I was still employed to those people who were on leave that are comparable to our leaves, and we did that, and it's undisputed. The city admitted it. In fact, the city admitted, and this is one point that needs to be bore out. Volume 2, page 20 is their answers to interrogatories, where they stated, there may be other employees of the police department who had paid leaves of 120 more to identify three other employees. One was on leave for four months, one was on leave for 14 months, and one was on leave for two years. And the city has not challenged on appeal the court denying their motion to strike Officer Fountain's affidavit. So they waived that argument. So those are the facts. So we have, in this case, leaves that have lasted anywhere from four months to two years, and so if we fit anywhere within that or around that, that is comparable for purposes of duration. It has to be comparable, or else you could not have a liberal application of the statute, and we admit a burden of proof, and by undisputed evidence, and the district court agreed. Also, the district court pointed out that we did establish the last two, the purpose and the involuntary nature. It's clear active duty is involuntary, and let me make one point that the district court did have a question about, and that was Officer Fountain's, it appeared to be about a four-year leave. He was not, if you combine them all, yes, he was on leave for four years, but that's not what his order said. His orders are in volume four, page 235 through 241 of the record. Each active duty order was for roughly a period of one year, each one, and the next day, or he would get another order, whether you want to say reactivating or continuing it. So his leaves weren't for four years. A broad application of USERA, looking at his orders, he was only on leave for one year, but on four occasions. I'd submit, Your Honor, that given the undisputed facts in this case, given the law, the application of USERA, given the requirement that it must be applied broadly and liberally, if these police officers cannot obtain summary judgment under these facts, then USERA is meaningless. It's just wasted print on paper. That is why the judgment entered by the district court below should and must be affirmed because they've carried their burden of proof. They have established undisputed material facts of all three factors, and one last thing to go to as an example is the Supreme Court's opinion in Anderson v. Liberty Lobby, where they discussed Rule 56 and how it should be applied. We have your argument, Mr. Mozenga. Oh, yes, sir. Thank you. Thank you, Your Honor. Your Honor, I'm sorry. Maybe I misinterpreted that clock. I thought I had a minute or two left, and I may have been out of time. I apologize for taking excess time. Okay. Thank you. Mr. Jackson. Mr. Mozenga said that the city admitted that there may be others. That was our initial interrogatory response, and Mike Lewis later clarified that he had confirmed that those were the only three. Kenneth Fountain's declaration said there may or may not be others, and may or may not be is not substantial evidence. So, and the basis for the district court strike, denying the motion to strike was, I'm just going to consider this as part of the evidentiary, you know, all the evidence on the summary judgment and weigh it, but so we didn't say she, and the motion to strike is not actually the proper procedure anymore in federal court. So, what we said was that his declaration is not substantial evidence that there were others. There were just three. But, and he said that you shouldn't group leaves, but that's sort of what they're trying to do. They're trying to take, you know, the paid administrative leave and even like subgroup little bits out of it, not just the investigation part of that leave, but then the those leaves. And I think that they can, they can choose the Ninth Circuit, I think in the Clarkson case said, you know, that the plaintiffs are the master of their complaint and they can, they can choose, you know, are we asserting short-term military leave or long-term military leave? But when we're looking at what leaves the city provides, my understanding was that that's, you know, you have to take all of that leave as, as, as what it is. And I wanted to go back to, I guess, when I was up here before on purpose. Mr. Mozingo started off his argument saying that the USERA exists to encourage military careers. That's exactly what the statute says in Section 4301. It lists two other purposes for the statute to minimize the disruption to the lives of those performing service and to prohibit discrimination against those who serve their country. And none of those purposes for military leave are to get the person out of the workplace so we can conduct an investigation. I mean, they're completely different types of purposes. So when it comes to purpose, the two types of leave are just not at all comparison. The district court used a very high level that's for the benefit of the employee kind of, you know, purpose. When that, it, when, if you, if you take that super high level view of almost all leave is for the benefit of the employee at some, at some stage. So it's, we think that you have to look at the, what is the reason they're giving the leave and the reason that the city is putting the people on leave is to get them out of the workplace to conduct an investigation. And the reason they're, they get the military leave is, well, it is stated in the statute. And it's been stated in other cases that we cited which are mostly consistent with what the statute says. So we would ask that the court reverse the district court and enter, direct it to enter summary judgment in favor of the city of Hoover. All right. Thank you, counsel. We're going to be in recess for 15 minutes.